[Crim. No. 5124.   Second Dist., Div. Two.   June 7, 1954.]

THE PEOPLE, Respondent, v. ELMER JACOB JACKSON et al., Defendants; CURLEY ROBERTSON et al; Appellants.

Alexander L. Oster, under appointment by the District Court of Appeal, for Appellants.

Edmund G. Brown, Attorney General, Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOX, J.—At about 6 p. m. on January 9, 1954, while Mr. Gaige, who was in charge of the Pasadena incinerator, was counting the day's receipts, two men entered his office and robbed him. One of them struck him and grabbed what money was in sight; the other carried a revolver. They were in Gaige's office only a matter of seconds. He was unable to identify them other than that they were colored and between 25 and 35 years of age. Two other men acted as lookouts.

Thereafter the four defendants were arrested and charged with the robbery. Defendants Jackson and Simpson entered pleas of guilty. Defendants Robertson and Pickens entered pleas of not guilty but upon a trial were found guilty by the jury. They appeal from the ensuing judgments and the orders denying their motions for a new trial.

During the course of the investigation Robertson and Pickens made statements and admissions to the police which amounted to a confession of their participation in the robbery. These statements were tape recorded without their

knowledge and were played back to the jury. Appellants repudiated these confessions at the trial and testified that they were elsewhere when the crime was committed.

Appellants seek a reversal upon three grounds: (1) the admission in evidence of their alleged confessions which they claim were not free and voluntary; (2) because the tape recordings which were played to the jury were inaudible and unintelligible; and (3) because the court did not give an alibi instruction. There is no merit in any of these contentions.

Appellants argue that their confessions were not free and voluntary on the ground that they were placed in solitary confinement without formal charges being filed against them, during which time they made their incriminating statements to the police, which were recorded. It is not claimed that any force or violence was used on either appellant. The record also discloses there were no threats of force against either of them, and no promises or offers of immunity or any other inducement held out to either of appellants in connection with their respective statements.

The officers requested the jailer to place each appellant in a single cell where he could not communicate with other prisoners or trusties, and so that they could not communicate with each other. Robertson was arraigned the next morning after his arrest, advised of his constitutional rights, and served a copy of the complaint. Bail was fixed and the date for the preliminary hearing set. Pickens surrendered on April 7th after the officers had been to his home with a warrant for his arrest. He was booked and advised of the charge against him. He was arraigned on the following day.

Appellants complain that they had no light in their cells except when eating; also that there were no windows or other means of seeing outside. The jailer testified as to the physical structure of the cells, the presence of windows or other openings therein, and that when the door and window are closed the light is left on. The judge and jury were then taken through the jail facilities. The treatment given these appellants was not different from that accorded other prisoners.

■ Whether a confession is free and voluntary is a preliminary question to be determined by the trial court.

■ Where there is a conflict in the evidence as to whether a confession was free and voluntary the admissibility of the alleged confession rests in the sound discretion of the trial judge. Here there is substantial evidentiary support for the

admission in evidence of the asserted confessions. (*People v. Cucco*, 85 Cal.App.2d 448, 452 [193 P.2d 86].) The jury was correctly advised as to the law relating to confessions.

Appellants certainly have no complaint because of any delay in filing the formal charges against them. The jury had an opportunity to see the cells in which appellants were placed, their size and equipment and apertures for light. They thus discovered that at least portions of appellants' descriptions of the jail facilities were not correct. The jury may also have disbelieved the testimony of the defendants that the lights were turned off except when they were eating. ■ The fact that appellants were not allowed to communicate with each other, or with other prisoners, does not vitiate their confessions, if they were otherwise without coercion. (*People v. Nagle*, 25 Cal.2d 216, 224 [153 P.2d 344].)

■ Appellants' contention that the tape recordings were not admissible in evidence is based on the assertion that they were inaudible and unintelligible. There seems to have been some difficulty in playing the recordings loud enough for all interested parties to hear. Specifically, counsel for appellants claimed he could not hear a word. Just what his vantage point was as compared with that of the jury, or the condition of his hearing, does not appear. There was no complaint from any member of the jury that they could not hear and understand the playing of the recordings. When the playing was completed the prosecutor asked whether the jury heard the last portion. There was no negative response. We may assume the machine and the loud speaker were placed so as to give the jury the best possible opportunity to hear and understand the recordings—a better opportunity than counsel had. Since there was no complaint from the members of the jury it is a fair inference that they heard and understood the recordings. ■ The fact that a recording may not be clear in its entirety does not of itself require its exclusion from evidence "since a witness may testify to a part of a conversation if that is all he heard and it appears to be intelligible." (*People v. Porter*, 105 Cal.App.2d 324, 331 [233 P.2d 102].)

■ In order that appellants' interests might not be jeopardized the recordings were replayed for them and their counsel after the jury went out.

It should be pointed out that these recorded conversations had already been testified to by the officer to whom they had been made by the appellants. Further, the officer testified that the recordings conformed to the conversation he had with

the respective appellants. Finally, no point was made on the motion for new trial, by affidavit, argument or otherwise, that the recordings could not be heard or understood. It is thus apparent that appellants did not at that time consider their cause prejudiced by any lack of audibility or clarity of the recordings when played for the jury.

Appellants rely on *People* v. *Stephens,* 117 Cal.App.2d 653 [256 P.2d 1033]. That case is clearly distinguishable. There much of the recordings played to the jury were inaudible and unintelligible and subject to varying interpretations by the jurors. On one occasion a juror interrupted to inquire as to a certain word but the court declined to assist. There was a failure there, but not here, to present witnesses who heard the recorded conversations. Thus the jurors in the Stephens case, *supra,* were left to speculate as to just what testimony had actually been presented to them.

Appellants complain of the court's failure to give an instruction on the subject of alibi. ■ However, from the state of the evidence, it does not appear that it was prejudicial not to give an instruction on that subject. It is true the appellants testified they were elsewhere when the robbery was committed. Ordinarily under such circumstances an alibi instruction should be given. Here, however, the confessions of the appellants showed their connection with and participation in the robbery. By their verdict the jury necessarily impliedly found the confessions were true, and that they were free and voluntary. The jury therefore disbelieved the alibi story of appellants. To have given an instruction on that subject would not have added any credence to their story and a different verdict would not have resulted. (*People* v. *Lucas,* 16 Cal.2d 178, 181 [105 P.2d 102, 130 A.L.R. 1485] ; *People* v. *Haywood,* 109 Cal.App. 2d 867, 871-872 [241 P.2d 665].) Hence there was no prejudice in the court's failure to give an instruction on the subject of alibi.

Appellants rely on *People* v. *Parker,* 135 Cal.App. 761 [27 P.2d 921], and *People* v. *Visconti,* 31 Cal.App. 169 [160 P. 410, 411]. Both of those cases are distinguishable. In the Parker case there was not only uncertainty as to the identification of the defendant but a failure of so-called corroborating evidence to definitely connect him with the crime ; whereas, in the instant case appellants actually confessed their connection with the offense charged. In the Visconti case, two witnesses testified in support of defendant's alibi; while here no

one but appellants testified to the alibis. Thus in the Visconti case it was necessary for the jury to weigh the alibi testimony of independent witnesses, hence an instruction on that subject was essential. In the instant case no such situation is presented. Here the alibi testimony is so related to the confessions that the acceptance of the latter as true and uncoerced automatically established the former as untrue.

The judgments and orders are affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied June 21, 1954.