[Crim. No. 20369. First Dist., Div. One. Nov. 17, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DWAYNE EMMERY HALL, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Joel Kirshenbaum, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney

General, W. Eric Collins and Nathan D. Mihara, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ELKINGTON, Acting P. J.—Defendant Hall's appeal is from a judgment of conviction, followed by suspended sentences to state prison and a grant of probation, founded upon a jury's verdicts of guilty on several counts of sale or transportation of LSD and peyote. (See Health & Saf. Code, §§ 11352, 11379.)

Following our earlier affirmance of the judgment we granted a rehearing in order to reconsider claimed sentencing error of the superior court. We again affirm, for the following reasons.

Hall first contends that: "The trial court committed reversible error in admitting into evidence a mostly inaudible tape recording of a conversation between appellant and undercover narcotics Officer Harmston."

Substantial portions of the tape recording, as often occurs under such circumstances, were inaudible. However, other portions contained understandable dialogue typical of a narcotic or dangerous drug transaction of sale. For instance: to an inquiry about how many "hits" could be obtained for $20, a voice answered "eleven." And there was dialogue suggesting that a hundred "hits" might be obtained for $125 or $145.

"The fact. . .that 'a recording may not be clear in its entirety does not of itself require its exclusion from evidence, "since a witness may testify to a part of a conversation if that is all he heard and it appears to be intelligible."'" (*People* v. *Ketchel* (1963) 59 Cal.2d 503, 519 [30 Cal.Rptr. 538, 381 P.2d 394], disapproved on other grounds *People* v. *Morse* (1969) 60 Cal.2d 631, 649 and fn. 2 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]; *People* v. *Schwartzman* (1968) 266 Cal. App.2d 870, 886 [72 Cal.Rptr. 616]; *People* v. *Dupree* (1968) 156 Cal. App.2d 60, 68 [68 Cal.Rptr. 525]; and see *People* v. *Curtis* (1955) 134 Cal.App.2d 624, 627 [286 P.2d 446]; *People* v. *Porter* (1951) 105 Cal. App.2d 324, 331 [233 P.2d 102].) The rule, as indicated by *People* v. *Ketchel*, is derived from the long-established principle "that a witness

may testify to part of a conversation if that is all that he heard and it appears to be intelligible." (*People* v. *Adamson* (1946) 27 Cal.2d 478, 485 [165 P.2d 3], affd. *sub nom. Adamson* v. *California* (1947) 332 U.S. 46 [91 L.Ed 1903, 67 S.Ct. 1672, 171 A.L.R. 1223]; *People* v. *Ramos* (1935) 3 Cal.2d 269, 272 [44 P.2d 301]; *People* v. *Luis* (1910) 158 Cal. 185, 194 [110 P. 580]; *People* v. *Tarbox* (1896) 115 Cal. 57, 64 [46 P. 896]; *People* v. *Daniels* (1894) 105 Cal. 262, 265 [38 P. 720]; *People* v. *Lint* (1960) 182 Cal.App.2d 402, 417 [6 Cal.Rptr. 95]; *People* v. *King* (1950) 101 Cal.App.2d 500, 508 [225 P.2d 500]; *People* v. *Rabalete* (1938) 28 Cal.App.2d 480, 485 [82 P.2d 707].)

In the admission or rejection of such evidence the trial court has a broad discretion; absent a manifest abuse of that discretion resulting in a miscarriage of justice, its decision will not be reversed on appeal. (Cal. Const., art. VI, § 13; Evid. Code, §§ 352-354; *People* v. *Wein* (1977) 69 Cal.App.3d 79, 90 [137 Cal.Rptr. 814].) We discern no abuse of discretion here.

We have not failed to consider *People* v. *Williams* (1975) 13 Cal.3d 559, 564-565 [119 Cal.Rptr. 210, 531 P.2d 778], relied upon by Hall in his appellate *reply* brief. But *Williams* simply gives effect to the rule that where part of a declaration "is given in evidence by one party," the adverse party, here the defendant, may "inquire into" other relevant parts of the declaration (see Evid. Code, § 356, formerly in substance Code Civ. Proc., § 1854) by cross-examination if feasible, or by evidence produced by the defendant including his own testimony. (See *People* v. *Whitehead* (1952) 113 Cal.App.2d 43, 50 [248 P.2d 27]; *Hawkinson* v. *Oesdean* (1943) 61 Cal.App.2d 712, 719 [143 P.2d 967].) In such a case *defendant* is "at liberty to offer evidence in contradiction" (*Sly* v. *Abbott* (1928) 89 Cal.App. 209, 218 [264 P. 507]), or otherwise to bring out "all that was said by [him] in the conversations" (*Wescoatt* v. *Meeker* (1944) 63 Cal.App.2d 618, 631 [147 P.2d 41]). Nothing is seen in *People* v. *Williams* which repudiates these long-established rules, or which otherwise forecloses proof of any intelligible or meaningful part of a conversation when the whole of it is unavailable.

It is next contended that: "The trial court committed reversible instructional error in permitting the jury to find that appellant had confessed and in effectively instructing them that appellant had made either a confession or admission."

■ The complained of instruction was that known as CALJIC No. 2.72 which as modified was read to the jury as follows: "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession or admission made by him outside of this trial. [¶] The identity of the person who is alleged to have committed a crime is not an element of the crime. Such identity may be established by an admission." The charged error was the inclusion in the first sentence of the words "confession or." (The same words *were omitted* from the last sentence.) The claimed prejudice is that it "permitted the jury to find that appellant had confessed to the charged crimes,..."

■ We find neither such error, nor probable prejudice. But assuming error, arguendo, we find it harmless according to the criteria of the state's Constitution, article VI, section 13, Penal Code section 1258, *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]), and *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].

Defendant Hall finally contends: "Assuming *arguendo* that the convictions are not reversed, the case must be remanded for resentencing because the court relied upon improper factors in imposing consecutive sentences."

It is found proper to set forth more of the sentencing proceedings than the portion relied upon by Hall. It follows (the italics are ours): "The Court: All right. The court has more or less outlined the circumstances of these crimes fully in its statements in connection with probation. The court considers the problems in mitigation and aggravation and indicates that it will upon its own motion pursuant to the recommendation of the probation officer pursuant to the waiver of time putting on evidence herein and the waiver of the defendant as to notice of the court's motion, aggravate and find that the crime will be the main crime herein will be count II of the information, namely, a violation of section 11352 of the Health and Safety Code.

"The reason for aggravation herein is as follows: The defendant is young but he has undertaken a life of crime. He claims [not?] to be associated with drug related activities. Of course, he has never seen fit to clean up his act in any fashion and *here he is before us for six weeks*

*after being out of prison and on parole* and himself committing these
four separate counts of drug related activities.

"In the same vein, the defendant is suggesting to us that he has
changed which of course is somewhat doubtful to the court. The court
finds that of course only one circumstance in mitigation, namely, his
age and the court finds *that the circumstances in aggravation far
outweigh mitigation* and the court aggravates a sentence under 11352
of the California Health and Safety Code.

"The court therefore sentences the defendant to state prison for five
years under count II of the information, namely, a violation of 11352.
The court states that in its opinion, the base term selected by the court
being count II should be aggravated, should be enhanced, and the court
will select count I, namely, a violation of section 11379, sale of LSD on
March 20, 1979 as an enhancement of the five year term, and in this
regard, *the reasons for the enhancement are one, to encourage the de-
fendant to live a righteous life because the court is going to grant
probation hereafter*, and without this extra aid to the defendant, the
court doubts that maybe its order of probation will be of any value.

"Secondly, *the court is aware that the crimes involved herein were
not isolated incidences of violation of crime but if [sic] defendant was
getting back into a multiple drug sale ring.* Now, the defendant says
that he is cooperative and he is willing to cooperate with the court; the
court often wonders when a defendant is before it whether or not that
means one thing whatsoever. When the court doesn't see anybody com-
ing into court on these drug related offenses and allowing the law
enforcement officers to get to the basic dealers that supply the drugs in
the first instance. *So the court finds really many reasons heretofore
enunciated for enhancing* pursuant to the law.

"The court therefore having found the defendant guilty of 11379 of
the Health and Safety Code, count I, sentences the defendant to state
prison on count I. Said sentence to run consecutively with the sentence
heretofore pronounced on count II having found count II to be the base
term. That would mean that the defendant—what is that, one third of
the base term of the second offense?

"Mr. Haase [Deputy District Attorney]: One third of the middle
term, I believe, your Honor.

"The Court: Which is three years and one third thereof, as being one year. By reason of aggravation and enhancement, the court has heretofore pronounced, the court therefore is sentencing the defendant to six years in the state prison. Now, the court orders—finds the defendant guilty of count III of the information in violation of 11379 in the Health and Safety Code of this state and the defendant is sentenced to the mid term thereof to state prison for a period of three years, said sentence to run concurrently with the sentences heretofore pronounced on count II and count I.

"The court finds the defendant guilty of count IV of the information and namely, a violation of section 11379 of the California Health and Safety Code and sentences the defendant to three years to state prison on a count thereof. However, said sentence to run concurrent with the previously pronounced judgment.

"The court has pronounced its reason for considering probation herein. The court will suspend the execution of sentence and grant to the defendant probation. The defendant as a condition of probation will do the following things. He will serve six months in the county jail, such period of time to run concurrently with the time being served on his violation of parole. He will forthwith upon being released from the county jail enroll in the Delancy Street Foundation program for at least two years. That he will remain in said program and not leave there without the express permission of the director of the Delancy Street Foundation and the probation officer.

"Further, that he will abide by all rules and regulations of the Delancy Street Foundation, that he remain there until he has successfully completed that program."

Hall argues: "With respect to the first basis for the court's sentencing decision, Rule 425 of the California Rules of Court sets forth certain *criteria to be considered by the judge in determining whether to impose concurrent or consecutive sentences.* The criteria are divided into two broad categories: 'Facts relating to the crimes' (Rule 425(a)) and 'Any circumstances in aggravation or mitigation' (Rule 425(b)). These two all-encompassing categories must logically be deemed to be exclusive, and the 'encouragement' of appellant not to violate the terms and conditions *of his probation plainly falls within neither.*" (Italics added; fns. omitted.)

Contrary to Hall's contention the several categories of rule 425(a) and (b) may *not* be deemed exclusive. Rule 408 provides: "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria shall be stated on the record by the sentencing judge."

We observe no rule violation, or other illegality in the "additional criteria" followed by the court in imposing *suspended* consecutive prison sentences, thus "to encourage the defendant to live a righteous life" and to avoid violation of his probation. Nor do we find that "the 'encouragement' factor was improperly considered because it constituted a rehabilitative and post-sentencing factor," as contended by Hall.

It is true that "the purposes of imprisonment for crime is punishment." (Pen. Code, § 1170, subd. (a)(1).) But it is nevertheless sound policy for a sentencing court to also encourage rehabilitation of a convicted offender. As conceded by Hall, "The court's desire to encourage the successful completion of probation...[is] certainly laudatory"; section 1170 should not be so narrowly read as to proscribe such a purpose. Nor do we find the trial court's "additional criteria"—"that the crimes involved herein were not isolated incidences of violation of crime... defendant was getting back into a multiple drug sale ring"—to be improper. They were quite clearly "circumstances in aggravation" according to rule 425(b), California Rules of Court.

The judgment is affirmed.

Newsom, J., and Grodin, J., concurred.